*E-FILED - 8/12/08*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LAMONTE BEVERLY,<br><br>　　　　Petitioner,<br><br>　v.<br><br>BEN CURRY, Warden,<br><br>　　　　Respondent. | No. C 05-2507 RMW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

Petitioner Lamonte Beverly, a California state prisoner who is proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his conviction for second-degree murder.[1] In response to an order to show cause, respondent has filed an answer and petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claims presented and will deny the petition.

---

1. The operative petition in this action is petitioner's second amended petition (Docket No. 23), which is the one cited in this order.

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.05\Beverly507.hcruling.md

United States District Court
For the Northern District of California

## BACKGROUND

Petitioner beat his friend to death in 2001. The state appellate court summarized the facts as follows:

> The victim was a frequent visitor to the Hobbs house in Oakland. The victim was already drunk when he, [petitioner], and two other men were driving back to Oakland from a Richmond casino. The victim was uttering remarks towards [petitioner] that were occasionally insulting and sometimes incoherent. This apparently irritated the others, all of whom told him to stop. Back in Oakland, the quartet went into the Hobbs family apartment. The victim was sitting in a chair. Accounts differ as to whether he or [petitioner] struck the first blow, but [petitioner] quickly got the upper hand. He repeatedly struck and kicked the victim, on the floor and as the victim tried to get to his feet. The fight moved outside the apartment. [Petitioner] continued hitting the victim, even when the latter was down on the ground and incapable of resistance. [Petitioner] and two others then drove the victim to his house and dumped him on the ground. Police were summoned and the victim taken to a hospital, where he was pronounced dead. An autopsy performed the following day showed that the victim, aged 53, died of blunt trauma to the head and severe injury to the brain. What the pathologist termed a "very significant artery" near the base of the skull had been ruptured by the trauma, resulting in "considerable hemorrhage" around the brain. Severe blows to his throat lacerated and "displaced" the larynx, producing additional internal bleeding. The larynx injury would require a good deal of force to cause. There were numerous contusions on his face and head, some of which – like the larynx damage – could have been caused by being kicked or struck by a fist. Analysis of the victim's blood revealed a small amount of cocaine and a blood alcohol level of .24. There were no injuries to his hands.
>
> [Petitioner] did not testify. The sole witness for the defense was a forensic pathologist who testified that some but not all of the victim's injuries could have been caused by shoes found in [petitioner's] possession at the time of his arrest.

People v. Beverly, No. A103852, 2004 WL 1753420 (Cal. Ct. App. Aug. 5, 2004) ("Op.") at *1. An Alameda Superior Court jury convicted petitioner of one count of second-degree murder (Cal. Pen. Code § 187) and of inflicting great bodily injury (id., § 12022.7(A)). Ans., Ex. 10, Vol. 6 (Reporter's Transcript, 5/16/03) at 202-03. The trial court sentenced petitioner to fifteen years-to-life in state prison. Op. at 1.

Petitioner appealed. The California Court of Appeal for the First Appellate District, in an unpublished opinion, affirmed the judgment. Id. at 1. The California Supreme Court denied his petitions for review and for a writ of habeas corpus. Ans., Exs. 7 & 9. Petitioner filed this federal habeas action in 2005.

As grounds for federal habeas relief, petitioner alleges that (1) his rights to due process and a fair trial were violated when the prosecutor misstated the law of manslaughter, a prejudicial error compounded by the trial court's failure to correct the error, and trial counsel's failure to object to it; (2) the trial court violated his right to due process and right to a fair trial when it failed to instruct the jury not to confuse and misapply the legal insufficiency of verbal provocation applicable to assault and battery to verbal provocation with respect to the murder/manslaughter determination; (3) the prosecutor violated his right against self-incrimination when he called attention to petitioner's failure to testify; (4) the evidence was insufficient as a matter of law to sustain the conviction for second degree murder; and (5) his appellate counsel rendered ineffective assistance by failing to raise a claim that the evidence was insufficient to support a conviction of second degree murder. Order to Show Cause at 2-3.

## STANDARD OF REVIEW

A federal habeas court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court may not grant a petition with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Id. § 2254(d)(1). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1). If constitutional error is found, habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

The state court decision to which 2254(d) applies is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. See Nunnemaker at 801-06; Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

## DISCUSSION

**1.  Prosecutor's Misstatement of the Law**

**A.  Prosecutorial Misconduct**

Petitioner contends that the prosecutor's misstatement of the law of manslaughter, and the trial court's failure to correct the mistake, resulted in a violation of due process. Pet., P. & A. at 1. More specifically, petitioner alleges that the prosecutor incorrectly indicated that intent to kill, caused by provocation, is an element of manslaughter, thereby complicating the defense's attempt to show that the killing was manslaughter. Id.

The facts upon which petitioner bases his claim are as follows. In her closing argument, the prosecutor incorrectly indicated that intent is an element of manslaughter: "[L]et's look at the elements [for manslaughter] for heat of passion and provocation which defense [counsel] suggested might apply here"; "I would submit that the provocation [the victim] did to the defendant is not of a character and degree that would naturally excite and arouse the passion of an ordinary person to kill." Ans., Ex. 10, Vol. 6 at 874.

The trial court, however, correctly instructed the jury on the definition of manslaughter, which tracks the language in California Jury Instruction Criminal ("CALJIC") No. 8.50:

> The distinction between murder and manslaughter is that murder requires malice while manslaughter does not. When the act causing the death, although unlawful, is done in the heat of passion or is excited by a sudden quarrel that amounts to adequate provocation, the offense is manslaughter. In that case, even if an intent to kill exists, the law is that malice, which is an essential element of murder, is absent.
>
> To establish that a killing is murder and not manslaughter, the burden is on

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.05\Beverly507.hcruling.md        4

> the People to prove beyond a reasonable doubt each of the elements of murder and that the act which caused the death was not done in the heat of passion or upon a sudden quarrel.

Ans., Ex. 10, Vol. 6 at 810ff; Ex. 1, Vol. 2 at 403.  The trial court also gave CALJIC No. 8.42, which describes the nature of provocation:

> The heat of passion which will reduce a homicide to manslaughter must be such a passion as naturally would be aroused in the mind of an ordinarily reasonable person in the same circumstances.  A defendant is not permitted to set up [his] own standard of conduct and to justify or excuse [himself] because [his] passions were aroused unless the circumstances in which the defendant was placed and the facts that confronted [him] were such as also would have aroused the passion of the ordinarily reasonable person faced with the same situation.  [Legally adequate provocation may occur in a short, or over a considerable, period of time.]
>
> The question to be answered is whether or not, at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from passion rather than from judgment.

Id., Ex. 1, Vol. 2 at 392.

The trial court also instructed the jurors that "you must accept and follow the law as I state it . . . if anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions."  Id., Ex. 10, Vol. 6 at 783.

Prosecutorial misconduct is cognizable in federal habeas corpus.  The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power.  See Darden v. Wainwright, 477 U.S. 168, 181 (1986).  A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  See id.; Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").  Under Darden, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness.  Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir.

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.05\Beverly507.hcruling.md        5

2005).  A prosecutorial misconduct claim is decided "'on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).

Based on this record, petitioner's claims of prosecutorial misconduct and the denial of his rights by the trial court are without merit.  Looking at the entire proceedings, the Court cannot say that the prosecutor's misstatement rendered the trial fundamentally unfair.  More specifically, the jury was instructed to adhere to the law as given by the trial court – which, as petitioner himself admits, gave correct instructions – even if the attorneys' statements conflicted with the trial court's instructions.  Jurors are presumed to follow their instructions.  See Richardson v. Marsh, 481 U.S. 200, 206 (1987).  Petitioner has not overcome this presumption.  Furthermore, the trial court's insistence to the jury that the trial court is the sole purveyor of jury instructions and its delivery of the accurate statement of the law served as a corrective to any possible misunderstanding created by the prosecutor's statements.  These claims are DENIED.

### B. Ineffective Assistance of Counsel

Petitioner contends that trial counsel rendered ineffective assistance when he failed to object to the prosecutor's misstatement of the law.  Pet., P. & A. at 1-2.

Claims of ineffective assistance of counsel are examined under Strickland v.Washington, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of counsel, petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Id. at 687-68.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.  Where the defendant is challenging his conviction, the

appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

Petitioner's claim of ineffective assistance of counsel is without merit. Leaving aside the issue whether trial counsel's failure to object constituted a deficient performance, petitioner has not demonstrated prejudice. As stated above, the trial court not only provided the correct instructions on murder and manslaughter, but it also instructed the jury that it must adhere to the formulation of the law as given by the trial court, even if it conflicted with the statements of the prosecutor and trial counsel. Jurors, as stated above, are presumed to follow their instructions. Petitioner has not overcome this presumption. Based on this record, the Court cannot say that petitioner has shown that trial counsel's alleged failure created a reasonable possibility that, absent the errors, the outcome of the proceeding would have been different.

**2.     Inconsistent Jury Instructions**

Petitioner contends that, owing to the trial court's correct but confusing instructions, the jury may have misapplied the instructions for a finding of assault to its finding of voluntary and involuntary manslaughter. Pet., P. & A. at 2-3. More specifically, petitioner asserts that jury may have confused and misapplied the trial court's instructions that words alone could never justify an assault or a battery with the trial court's instructions that words alone could be sufficiently provoking to reduce murder to manslaughter. Id. Petitioner contends that the trial court's failure to give a corrective instruction "to compensate" for the confusing instructions resulted in a conviction that violates due process. Id. at 2.

Petitioner's claim is without merit. There is no indication of jury confusion or that the jury misapplied the instructions for one crime to another. The trial court gave correct instructions that provocation from words alone is not a sufficient defense to assault or battery (CALJIC Nos. 9.11 and 16.142) and it gave correct instructions that words alone may constitute provocation sufficient to change a murder into voluntary or involuntary manslaughter (CALJIC Nos. 8.42, 8.43, 8.44, 8.51). Ans., Ex. 1, Vol. 2 at 392-94, 399,

404. As stated above, jurors are presumed to follow their instructions. Petitioner has not overcome this presumption. This claim is DENIED.

### 3. Griffin Error

Petitioner contends that the prosecutor called attention to the fact that petitioner did not testify at trial, thereby violating his right against self-incrimination, as defined by the Supreme Court in <u>Griffin v. California</u>, 380 U.S. 609 (1965). Pet., P. & A. at 3-4.

The facts on which petitioner bases his claim are summarized by the state appellate court as follows:

> At trial the prosecution introduced evidence (in the form of edited tape recordings) of excerpts of telephone calls made by [petitioner] while he was in jail. (The contents of the recordings were not transcribed for the record.) During his initial closing argument, the prosecutor referred to one of the recordings as showing that [petitioner] was angry with the victim on the night of the killing. During her closing argument, [petitioner's] counsel argued that it was a "red herring" for the prosecutor to suggest that while in jail [petitioner] was attempting to fabricate evidence and "trying to dissuade [witnesses]." In his final closing argument, the prosecutor told the jury:
>
> "Defense counsel talked about the phone calls and seemed to suggest that they really didn't mean anything. I'll leave that up to you. The phone calls include conversations about intimidation, bribing, getting witnesses to avoid coming to court, switching up their stories, getting rid of shoes. Those are the actions – those are the comments and the actions of a man who's manipulating, trying to manipulate the system, manipulate you, manipulate the evidence to get away with murder.
>
> "You've seen him. He sits here in court. Sometimes he smirks. Sometimes he laughs. Listen to the tapes, the phone calls. He thinks it's funny. You can hear him laughing about this intimidation of witnesses. If there were any phone calls that suggested that [petitioner] was acting in self-defense, [petitioner] was under the influence of alcohol so that he could not form specific intent, that he was completely innocent, that [the [victim] was the one who attacked him, you better believe defense would be playing them right here for you."
>
> The court sustained [petitioner's] immediate objection that this "misstates the law and the evidence. After the prosecutor concluded her argument and the jury began deliberating, [petitioner] moved for a mistrial on the ground that the prosecutor's comment violated the rule of <u>Griffin v. California</u> (1965) 380 U.S. 609. In the course of opposing the motion, the prosecutor provided some pertinent background: "Defense counsel actually during examination of Jill Tague [the jailhouse employee who provided the tapes of [petitioner's] telephone calls] suggested that perhaps the People were not playing all the relevant portions of the phone calls. I made a motion to in fact play all the portions so that defense would have no concerns that they were taken out of context. That was denied. Yet in argument defense again tries to suggest that

> the people are doing something inappropriate by playing only snippets of these phone calls....
>
> The court denied the mistrial motion, and also the [petitioner's] new trial motion made on the same ground.

Op. at 3-4. In its review of petitioner's claim, the state appellate court found no Griffin error, stating that "[t]he subject of the comments was not [petitioner's] testimony in court, but what he said on the tapes," and that the prosecutor's statements were a "fair response" to trial counsel's suggestion that the evidence of petitioner's comments "had been cherry-picked" by the prosecutor. Id. at 5. According to the state appellate court, because trial counsel brought up the topic, the prosecutor was entitled to respond to it. Id.

The Fifth Amendment prohibits the prosecutor from commenting to the jury on the defendant's failure to take the stand in his own defense. Griffin, 380 U.S. at 615. Where a prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, or to treat the defendant's silence as substantive evidence of guilt, the defendant's privilege against compulsory self-incrimination is violated. Id. at 615. While it is proper for the prosecution to address the defense arguments, a comment is impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify. Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987) (citing United States v. Bagley, 772 F.2d 482, 494 (9th Cir. 1985)). "A comment on the failure of the defense as opposed to the defendant to counter or explain the testimony presented or evidence introduced is not an infringement of the defendant's Fifth Amendment privilege." U.S. v. Lopez-Alvarez, 970 F.2d 583, 595-596 (9th Cir. 1992) (internal quotation marks and citations removed). However, such commentary by the prosecutor requires reversal only if "(1) the commentary is extensive; (2) an inference of guilt from silence is stressed to the jury as a basis for the conviction; and (3) where there is evidence that could have supported acquittal." Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993) (citation omitted). Put differently, such improper commentary warrants reversal

only if it appears that it may have affected the verdict.  See Lincoln, 807 F.2d at 809; see also Cook v. Schriro, 516 F.3d 802, 822 (9th Cir. 2008) (two references in rebuttal argument to defendant being the only eyewitness other than the co-defendant to the killings was harmless error, if any error, because evidence of guilt was overwhelming and prosecutor was merely emphasizing that co-defendant had been an eyewitness); United States v. Rodriguez-Preciado, 399 F.3d 1118, 1132 (9th Cir. 2005) (holding that comment on the defense's failure to explain introduced testimony or evidence does not infringe on defendant's Fifth Amendment rights); United States v. Mende, 43 F.3d 1298, 1301 (9th Cir. 1995) (prosecutor's comments not improper where they simply reminded jury that defense had failed to present certain evidence); Guam v. Ojeda, 758 F.2d 403, 407 (9th Cir. 1985) (courts will not reverse when prosecutorial comment is single, isolated incident, does not stress inference of guilt from silence and is followed by curative instructions).

    Petitioner's claim is without merit.  The bulk of the prosecutor's comments – more specifically, the statements following "Listen to the phone calls" – were comments on evidence admitted at trial, and also, were responses to trial counsel's intimation that the prosecution had not presented enough of the taped conversations.  As such, these statements are not error under Griffin, but rather a response to a defense argument and to the defense's failure to present evidence supporting its assertion.

    Furthermore, the prosecutor's other comments – more specifically, "You've seen him.  He sits here in court.  Sometimes he smirks.  Sometimes he laughs" – were not improper under Griffin.  First, this commentary was not extensive – a few sentences and none directly commented on the fact that petitioner did not testify at trial.  Second, the comments did not encourage the jury to infer guilt from petitioner's silence, but rather on his observable demeanor in court.  Third, petitioner has pointed to no evidence that would have supported acquittal.  Finally, the trial court sustained trial counsel's objection that the comments misstated the law and the evidence.  Ans., Ex. 10, Vol. 6 at 886.  Based on this record, the Court cannot say that the prosecutor's comments violated his right against self-

incrimination. This claim is DENIED.

### 4.        Sufficiency of Evidence of Murder

Petitioner contends that there was insufficient evidence that he committed second degree murder. Pet., P. & A. at 5. Petitioner simply states, without providing any details, that the prosecution failed to prove all the elements of murder beyond a reasonable doubt. He also asserts that the evidence at trial supported his defense that the victim's words provoked petitioner and therefore that the crime was manslaughter, not murder.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" See id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. See Jackson, 443 U.S. at 324.

Murder, under California law, is "the unlawful killing of a human being . . . with malice aforethought." Cal. Pen. Code § 187. "Malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." Id. § 188.

Petitioner's claim is without merit because evidence existed on which a reasonable juror could find petitioner guilty of second degree murder. First, petitioner admitted that he killed the victim, as trial counsel stated in his closing argument: "But basically what you have is a voluntary manslaughter [which] is an unlawful intentional killing where the intentional aspect of it is essentially legally negated because of some other factors." Ans.,

Ex. 10, Vol. 6 (Reporter's Transcript, 5/15/2003) at 851. Second, the jury could have based its finding of murder on the evidence that petitioner continued to beat the victim even after the victim tried to stand up and that the fighting continued from the apartment to the outside, even though the victim tried to escape. Also, evidence was introduced that the victim suffered severe injuries to his head and brain, as well as damage to the larynx, which had to have been caused by "a good deal of force." Though a jury could have read the evidence produced at trial to support a finding of manslaughter, the Court cannot say that no rational juror could have found petitioner guilty of murder beyond a reasonable doubt.

### 5.  **Ineffective Assistance of Appellate Counsel**

Petitioner contends that his appellate counsel rendered ineffective assistance by failing to raise the issue that there was insufficient evidence to support a conviction of murder beyond a reasonable doubt. Pet., P. & A. at 5-6.

Claims of ineffective assistance of appellate counsel, although technically due process claims, are reviewed according to the standard set out in Strickland v. Washington, 466 U.S. 668 (1984). See Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). A defendant therefore must show that counsel's representation did not meet an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. See Miller, 882 F.2d at 1434 & n.9 (citing Strickland, 466 U.S. at 688, 694; U.S. v. Birtle, 792 F.2d 846, 849 (9th Cir. 1986).

It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. See Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997); Miller, 882 F.2d at 1434 n.10. The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. See id. at 1434. Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason – because he declined to raise a weak issue. Id.

Petitioner's claim is without merit. As discussed above, there is no merit to petitioner's claim that there was insufficient evidence of murder. Because that claim was meritless, appellate counsel's failure to raise the issue on appeal could not have resulted in prejudice to petitioner. Furthermore, because underlying claim is without merit, its weeding out by appellate counsel may constitute an instance of effective advocacy, as defined in Miller. This claim is DENIED.

## CONCLUSION

Applying the highly deferential standard imposed by AEDPA, this court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (1), (2). The petition for writ of habeas corpus is DENIED. The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: 8/8/08

_____
RONALD M. WHYTE
United States District Judge